The SILVERBROOK CEMETERY COM-
PANY, a Delaware corporation,
Plaintiff Below, Appellant,

v.

The DEPARTMENT OF FINANCE OF
NEW CASTLE COUNTY, and William
Zimmerman, Director of the Department
of Finance of New Castle County, De-
fendants Below, Appellees.

Supreme Court of Delaware.

Submitted: June 16, 1982.

Decided: Aug. 2, 1982.

Bruce M. Stargatt and Richard H. May
(argued) of Young, Conaway, Stargatt &
Taylor, Wilmington, for plaintiff below, ap-
pellant.

Dennis J. Siebold (argued) of the New
Castle County Law Dept., Wilmington, for
defendants below, appellees.

Before HERRMANN, C. J., McNEILLY
and QUILLEN, JJ.

HERRMANN, Chief Justice:

In this appeal, the Court is asked to re-
view the denial by Superior Court of a
petition for a Writ of Prohibition by the
Silverbrook Cemetery Company (herein-
after "Silverbrook") filed to prevent the
County from assessing property tax against
property owned by Silverbrook and desig-
nated for cemetery use.

I.

In an earlier appeal, this Court found
that the 1971 amendment to Article VIII
§ 1 of the Delaware Constitution, when im-
plemented by County Ordinance 74–61, did
not result in repeal of Silverbrook's charter
tax-exempt status. See *Board of Assess-
ment Review v. The Silverbrook Cemetery
Company*, Del.Supr., 378 A.2d 619 (1977).[*]
Undecided in that opinion was the effect of
9 *Del.C.* § 8104 [**] on Silverbrook's tax-ex-
empt status; that question, it was deter-
mined, had not been litigated before the
Board of Assessment Review. We now
have that issue for decision.

The Superior Court concluded that the
tax exemption, granted to Silverbrook by
special act of the General Assembly, con-
flicted with § 8104; that the exemption
was thereby impliedly repealed, § 8104 be-
ing the later enactment. *Silverbrook Cem-
etery Co. v. Dept. of Finance*, Del.Super.,
444 A.2d 267 (1982). The Superior Court

[*] For the texts of Art. VIII § 1 and Ordinance
74–61, see 378 A.2d at 620.

[**] 9 *Del.C.* § 8104 provides in relevant part:
"No real property owned and used by the
organizations listed below or for the purposes
stated below, except that which is held by way

of investment, shall be liable to taxation and
assessment for public purposes by any county
or other subdivision of this state.

*   *   *   *   *   *

Burial lots and cemeteries."

found the statutory words "held by way of investment" a clear indication of "a legislative intent to remove the blanket exemption which previously existed and to provide in its place an investment test to insure that those who employ private capital in the development of certain activities, previously exempt, for the obtaining of profit should share in the general tax obligation...." 444 A.2d at 270. We must disagree.

## II.

Silverbrook was granted corporate status by a special act of incorporation of the General Assembly in 1895. 20 *Del.L.* ch. 82. By its charter, Silverbrook was granted tax-exempt status as a "public facility." Relevant to this case is the following provision from Silverbrook's charter:

"Section 6. All lots of ground sold by the said company shall be exclusively used for burial lots; and the estate of the proprietors respectively in their respective lots shall be of qualified inheritance—that is to say, the same shall descend as real estate to heirs; *and the cemetary (sic) grounds, with the buildings, improvements and appurtenances shall be exempt from taxation* and shall not be levied upon or taken by execution or other process of law or equity; and the said lots so sold shall be held subject to the by-laws and regulations of said company; provided, that no burial lot shall be aliened or devised so as to vest any right in the alienee or devisee without the approval of said board of directors." (emphasis added)

Since cemetery lots are sold for profit by Silverbrook, it is argued that the property is "held by way of investment" and, but for the express exemption, would be subject to tax assessment under § 8104. The County, believing Silverbrook's exemption to be thus removed, began assessment procedures in 1978 against Silverbrook's property, consisting of about 68 acres of land with "buildings, improvements and appurtenances."

## III.

Section 8104 was first enacted as part of the 1953 Code, identified as 9 *Del.C.* § 8105. So far as is pertinent here, it was carried forward *verbatim* in the present 1974 Revised Code but renumbered 9 *Del.C.* § 8104. Likewise, incorporated into the 1953 Code, and included *verbatim* in the 1974 revision, is 1 *Del.C.* § 105 which provides:

"No private act ... or special act of incorporation, in effect on the date of enactment of this [1953 and 1974] Code, shall be affected by any provision hereof."

Section 8104 (and its predecessor § 8105) is a "provision" of the Code and subject to the restriction of § 105. Therefore, under the plain and unambiguous language of § 105, § 8104 can have no effect on the terms of Silverbrook's "special act of incorporation" and its tax exemption contained therein.

Because § 105 is clear and unambiguous, there is no room for statutory interpretation or construction. *A & P Stores v. Hannigan*, Del.Supr., 367 A.2d 641 (1976). The Trial Court erred by engaging in an interpretation of § 105 and holding that it does not apply to a modification of a corporate charter by a later statutory modification.

The Writ of Prohibition must therefore be issued. See *Family Court v. Dept. of Labor & Indus. Rel.*, Del.Ch., 320 A.2d 777 (1974); 10 *Del.C.* § 562.

\*  \*  \*

Reversed and remanded for proceedings consistent herewith.