**Carolyn SOSTRE and Nelson Sostre, Plaintiffs Below, Appellants,**

v.

**Joanne SWIFT, M.D., the Medical Center of Delaware, Inc., a hospital corporation of the State of Delaware, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Dec. 12, 1991.
Decided: Jan. 24, 1992.

Bruce L. Hudson and Philip M. Finestrauss of Daley, Erisman, Van Ogtrop & Hudson, Wilmington, for appellants.

Richard Galperin of Morris, James, Hitchens & Williams, Wilmington, for appellees.

Before MOORE, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a grant of summary judgment by the Superior Court in favor of the defendants-appellees, Joanne Swift, M.D., ("Dr. Swift") and the Medical Center of Delaware, Inc. ("Medical Center"). On April 2, 1989, the plaintiffs-appellants, Carolyn Sostre and her husband, Nelson Sostre ("the Sostres"), commenced a civil action against Dr. Swift, the Medical Center, Nashua Corp., and Portex, Inc.[1] In their complaint, the Sostres alleged medical negligence and sought damages for personal injury, emotional distress, and loss of consortium allegedly resulting from the medical care rendered to Carolyn Sostre by Dr. Swift, a resident physician employed by the Medical Center.

The sole issue in this appeal is the proper construction of 18 *Del.C.* § 6853, a portion of the Delaware Medical Malpractice Act. That statute, although generally requiring expert medical testimony to establish both negligence and causation, also creates a rebuttable inference of negligence and causation in certain exceptional situations, even in the absence of such expert medical testimony. One of those exceptional circumstances, when a foreign object is unintentionally left within the body of a patient, is at issue in this appeal. 18 *Del.C.* § 6853.

The record reflects that the tip of a broken catheter remains in Carolyn Sostre's body following a medical procedure performed by Dr. Swift. The Sostres presented no medical testimony to support any of the allegations in their complaint, including their allegation of "personal injury." In the case *sub judice,* the Superior Court concluded that to establish a "personal injury," as that term is used in 18 *Del.C.* § 6853, a plaintiff is required to demonstrate more than the fact that a foreign object had been unintentionally left within a patient's body. The Superior Court opined that, notwithstanding the rebuttable inference created by the undisputed presence of a foreign object unintentionally left within Carolyn Sostre's body, Section 6853 required the Sostres to produce expert medical testimony that the foreign object had caused Carolyn Sostre "personal injury." Accordingly, the Superior Court granted summary judgment in favor of Dr. Swift and the Medical Center and ruled that, in the absence of expert medical testimony, no cognizable "personal injury" existed pursuant to Section 6853.

In this appeal, the Sostres contend that the Superior Court erred in construing 18 *Del.C.* § 6853 as requiring them to produce expert medical testimony to establish the existence of a "personal injury," after the Medical Center and Dr. Swift admitted that a foreign object was unintentionally left inside and remains within Carolyn Sostre's body. We agree. Therefore, the Superior Court's decision granting summary judgment in favor of the Medical Center and Dr. Swift is reversed.

---

1. The claims against Nashua Corp. and Portex, Inc. were subsequently dismissed, upon stipulation by the Sostres, on May 1, 1989.

## Facts

The underlying facts are not in dispute. Carolyn Sostre, who was pregnant with her first child, went to the Medical Center on April 14, 1987 because she was experiencing labor pains. After arriving at the Medical Center, Carolyn Sostre received an epidural injection of anesthesia to relieve her pain during labor and delivery. The epidural injection was given to Carolyn Sostre by Dr. Swift.

As Dr. Swift prepared to administer the anesthesia to Carolyn Sostre, Dr. Swift met resistance while attempting to insert a catheter into the epidural space of Carolyn Sostre's body. In response to that resistance, Dr. Swift manipulated the catheter, pulled it back and then pushed it into the epidural space again. This proved to be unsuccessful in overcoming the resistance and the catheter was removed. Upon removing the catheter, Dr. Swift realized that its tip had broken off within Carolyn Sostre's body. Nevertheless, Carolyn Sostre progressed routinely in her labor and delivered a healthy baby boy.

Dr. Swift consulted Dr. Weiss, an anesthesiologist, on April 14 at 2:00 p.m. about the presence of the broken catheter tip within Carolyn Sostre's body. Dr. Weiss indicated that complications from the broken catheter tip were unlikely except for the possibility of infection. Dr. Weiss apparently also advised Dr. Swift that "attempts to remove the catheter piece [would be] potentially more traumatic-harmful than watchful waiting and reassurance to the patient." According to Dr. Weiss, infection will generally occur, if at all, within the first few hours of the incident. The record reflects that Carolyn Sostre has not developed any infection.

After she had recovered following the birth of her son, Carolyn Sostre was promptly advised by Dr. Swift that the catheter tip had broken off and remained within her body. Dr. Swift also informed Carolyn Sostre about Dr. Weiss' recommendation to "watch and wait" rather than attempt to remove the catheter. It is uncontested that the tip of the broken catheter was unintentionally left within the body of Carolyn Sostre by Dr. Swift and that it remains there. Although the tip of the broken catheter is not causing Carolyn Sostre any pain, its continued presence in her body has caused her anxiety.

## The Parties' Contentions

The Medical Center and Dr. Swift concede that "a catheter tip was left in [Carolyn Sostre's] body, and that a foreign object [unintentionally] left in [her] body leads to a rebuttable inference of negligence." *See* 18 *Del.C.* § 6853. However, according to the Medical Center and Dr. Swift, although Section 6853 entitles a plaintiff to a rebuttable inference of medical negligence, it does not relieve a plaintiff of the burden of establishing through expert testimony that such medical negligence proximately caused "personal injury" to the plaintiff. Therefore, the Medical Center and Dr. Swift, while admitting medical negligence, argue that the Superior Court properly granted summary judgment in their favor, because the Sostres failed to offer expert medical testimony that the defendants' medical negligence had proximately caused Carolyn Sostre any "personal injury."

The Sostres acknowledge that they did not identify a medical expert witness who would testify that the broken catheter tip within her body had caused Carolyn Sostre any "personal injury." However, according to the Sostres, Section 6853 provides that a "personal injury" is established *per se* by the unintentional presence of a foreign object within a plaintiff's body and, as a corollary thereto, establishes a rebuttable inference that such personal injury has been caused by medical negligence. Consequently, the Sostres argue that the Superior Court erred, as a matter of law, in granting the Medical Center and Dr. Swift's motion for summary judgment on the basis that the Sostres did not provide expert medical testimony to establish that Carolyn Sostre had sustained a "personal injury."

## Standard of Review

■ Following the grant of a motion for summary judgment, the applicable stan-

dard of appellate review requires this Court to examine the record to determine whether, viewing the facts in the light most favorable to the non-moving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. *Benge v. Davis,* Del.Supr., 553 A.2d 1180, 1182 (1989). In this case, there are no material issues of fact. The question presented is whether a foreign object that is unintentionally left and remains within a patient's body establishes a "personal injury" *per se,* as that term is used in 18 *Del.C.* § 6853, in the absence of expert medical testimony to that effect. Since the question presented is exclusively one of statutory construction, it will be reviewed by this Court *de novo. Moses v. Board of Educ.,* Del.Supr., 602 A.2d 61 (1991). Accordingly, this Court must determine whether the Superior Court erred, as a matter of law, in formulating or applying legal principles. *Id.*

### Medical Malpractice Act Expert Testimony and Exceptions

This Court has previously reviewed the legislative history of the Delaware Medical Malpractice Act ("the Act"). *See Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987); *Dunn v. St. Francis Hosp.,* Del.Supr., 401 A.2d 77 (1979). Prior to the enactment of the Act, the need for expert medical testimony to support a plaintiff's claim in a medical malpractice action had been generally recognized. *See Robinson v. Mroz,* Del.Super., 433 A.2d 1051, 1056 (1981) (citing *Christian v. Wilmington Gen. Hosp. Ass'n.,* Del.Supr., 135 A.2d 727 (1957); *Peters v. Gelb,* Del.Supr., 314 A.2d 901 (1973)). However, "[t]he Act particularized the need for expert medical testimony and defined those cases in which a rebuttable inference of negligence could arise without it." *Id.* at 1057.

According to the general mandate of the Act, "No liability shall be based upon asserted negligence unless expert medical testimony is presented as to [both] the alleged deviation from the applicable standard of care in the specific circumstances of the case [negligence] and as to the causation of the alleged personal injury...." 18 *Del.C.* § 6853. *See Wahle v. Medical Ctr. of Del.,* Del.Supr., 559 A.2d 1228, 1231 (1989). Notwithstanding its general mandate, however, the Delaware Medical Malpractice Act provides that "such expert medical testimony shall not be required if a malpractice review panel has found negligence to have occurred and to have caused the alleged personal injury or death and the opinion of such panel is admitted into evidence." 18 *Del.C.* § 6853. *See Russell v. Kanaga,* Del.Supr., 571 A.2d 724 (1990). The Act also includes several additional limited exceptions to its general mandate by providing:

[A] rebuttable inference that personal injury or death was caused by negligence shall arise where evidence is presented that the personal injury or death occurred in any 1 or more of the following circumstances: (1) A foreign object was unintentionally left within the body of the patient following surgery; (2) an explosion or fire originating in a substance used in treatment occurred in the course of treatment; or (3) a surgical procedure was performed on the wrong patient or the wrong organ, limb or part of the patient's body. Except as otherwise provided herein, there shall be no inference or presumption of negligence on the part of a health care provider.

18 *Del.C.* § 6853. The proper construction of one of those statutory exceptions is the subject matter of this appeal. That exception relates to the situation when a foreign object is unintentionally left within a patient's body.

### Foreign Object Exception

At issue in this appeal is what evidence the Delaware Medical Malpractice statute required the Sostres to present in support of their claim of medical malpractice. The undisputed record reflects that the tip of a catheter was broken off by Dr. Swift within Carolyn Sostre's body. The record also reflects that the broken catheter tip remains within Carolyn Sostre's body unintentionally and, although not causing her pain, is causing her anxiety.

■ The statutory language, which is the focus of this appeal, provides, in relevant part, that "a rebuttable inference that personal injury or death was caused by negligence shall arise where evidence is presented that the personal injury or death occurred ... [when a] foreign object was unintentionally left within the body of the patient following surgery." 18 *Del.C.* § 6853. It is well settled that "[s]tatutory language, where possible, should be accorded its plain meaning." *State v. Lillard,* Del.Supr., 531 A.2d 613, 617 (1987). Moreover, when a statute is clear and unambiguous there is no need for statutory interpretation. *Silverbrook Cemetery Co. v. Department of Fin.,* Del.Supr., 449 A.2d 241, 242 (1982).

■ Section 6853 does not require a plaintiff in a medical malpractice action to produce expert testimony in a limited number of exceptional circumstances. The unambiguous language of Section 6853 relieves a plaintiff of the burden of presenting any expert medical testimony to prove the existence of a personal injury beyond that which is necessary to establish that a foreign object was unintentionally left within the patient's body. Section 6853 provides that a "personal injury" is established *per se* by the unintentional presence of a foreign object within a plaintiff's body.[2] As a corollary thereto, Section 6853 establishes a rebuttable inference on the issues of causation and negligence, i.e., that such personal injury "was caused by negligence."

■ This Court has recently held that *"in the absence of an applicable statutory exception,* when there has been adequate time for discovery in a medical malpractice action and the record unambiguously reflects that the plaintiff's allegations are not and will not be supported by any expert testimony," the defendant is entitled to judgment, as a matter of law, and a defense motion for summary judgment does not require the support of an expert's affidavit. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56 (1991). *See also Russell v. Kanaga,* Del.Supr., 571 A.2d 724, 732 (1990). Conversely, pursuant to Section 6853, when the undisputed record reflects the *presence of an applicable statutory exception,* a plaintiff is not required to produce expert medical testimony to withstand a defendant's motion for summary judgment. 18 *Del.C.* § 6853. Consequently, the factual presence, on the record, of an exception set forth in Section 6853 precludes the entry of summary judgment in favor of a defendant, as a matter of law, notwithstanding the absence of any expert medical testimony to support a plaintiff's claim.

In this case, the Sostres established, on the record, the factual presence of an exception specifically enumerated in Section 6853, i.e., the unintentional presence of a foreign object within Carolyn Sostre's body. Nevertheless, the Superior Court ruled that the Sostres were required to produce additional evidence from an expert medical witness of a "personal injury," in order to survive the defendants' motion for summary judgment. When the Sostres produced facts on the record to establish the presence of an exception specifically set forth in Section 6853, the unambiguous language of that statute made it unnecessary for them to produce *any* expert medical testimony to avoid a nonsuit.

*Conclusion*

The Superior Court erred, as a matter of law, by granting the Medical Center and Dr. Swift's motion for summary judgment. The decision of the Superior Court, granting that motion, is REVERSED. This matter is remanded for further proceedings in accordance with this opinion.

**2.** A foreign object left unintentionally within a patient's body, established by Section 6853 as a personal injury *per se,* is a "present physical injury" as the latter term is used by this Court in *Merganthaler v. Asbestos Corp. of Am.,* Del. Supr., 480 A.2d 647, 651 (1984). As a "present physical injury," the foreign object (broken catheter tip) unintentionally left within Carolyn Sostre's body by Dr. Swift provides a proper legal basis for *her* claim of mental anguish and her husband's claim for loss of consortium. *Id.*